[No. D005215. Fourth Dist., Div. One. Nov. 3, 1987.]

TAYLOR BUS SERVICE, INC., et al., Plaintiffs and Appellants, v. SAN DIEGO BOARD OF EDUCATION et al., Defendants and Respondents.

1332

COUNSEL

Frederick E. Turner, Turner, Cooper & Reynolds and James F. Mc Gee for Plaintiffs and Appellants.

Christina L. Dyer and Jose A. Gonzales for Defendants and Respondents.

## OPINION

BENKE, J.—Plaintiffs Taylor Bus Service, Inc., and Josephina Haime (Taylor) appeal the denial of their petition for a writ of mandamus. The action arises from a dispute between the San Diego Unified School District (District) and Taylor concerning the award of a contract for school bus transportation services for the 1986-1987 school year. Specifically, the dispute involves whether Taylor's offer of self-insurance was responsive to a bid requirement that liability insurance be secured by the party awarded the contract. Taylor contends in rejecting its low bid as nonresponsive, the District failed to exercise its discretion to determine whether Taylor's bid substantially complied with bid specifications. Taylor alternatively argues if the District exercised its discretion and determined the offer of self-insurance not in substantial compliance, it did so without requisite due process. Taylor further argues the District's conditional award of the contract to it could not be rescinded. Finally, Taylor argues if the contract award could be rescinded, it was improper for the District to award the contracts to others without further competitive bidding. We hold the District did, with requisite due process, properly exercise its discretion in determining Taylor's bid to be nonresponsive, properly rescinded the conditional award to Taylor and properly awarded the contract without further competitive bidding.

### I

Education Code section 39802 provides for the contracting of public transportation services by school districts. The section requires, when an expenditure of more than $10,000 is involved, bids be secured pursuant to Education Code sections 39640 and 39641.[1] (Ed. Code, § 39802, does not require the contract be let to the lowest bidder.)

The present dispute concerns a transportation contract for the 1986-1987 school year. However, the controversy began in October 1985 when the District learned Taylor was not in compliance with the liability insurance requirements of the transportation contracts let for the 1985-1986 school year. Those contracts required $10 million of comprehensive general liability insurance. Taylor had a $1 million primary policy, $4 million covered by a self-insurance trust and $5 million covered by an excess insurance carrier.

---

[1] Education Code section 39802 refers to the competitive bidding provisions of Education Code sections 39640 and 39641. However, those sections were repealed in 1982. (Stats. 1982, ch. 465, § 11, p. 1914.) Those sections were replaced by Public Contract Code sections 20111 and 20112. (See Pub. Contract Code, § 20110.)

The District requested Taylor submit information concerning its insurance trust and informed Taylor its contract might be terminated for failure to comply with the contract insurance requirements. Taylor provided the information.[2]

In December 1985, District staff recommended, because of the impossibility of securing replacement buses, the San Diego Board of Education (School Board) partially waive the insurance requirement of Taylor's contract and accept the $4 million self-insurance plan. The staff indicated the insurance trust had been reviewed by District counsel who had concluded it was not a policy of insurance meeting contractual requirements, that the $4 million in the trust was available for all claims against Taylor, not just those involving the District, and could be depleted by a single incident. The District's insurance broker also reviewed the trust and determined it did not violate California law. The broker noted that given difficulties in the insurance industry, it was a reasonable business risk for the District to accept the trust at that time.

District staff recommended acceptance of the trust but only for the balance of the then existing contracts. District staff further recommended that all carriers be required to provide evidence of the required insurance for contracts let for the 1986-1987 school year. The School Board approved the partial waiver of Taylor's insurance requirements.

The District informed Taylor by letter on December 12, 1985, that those contracts held by Taylor and subject to renewal would not be renewed because of Taylor's failure to provide evidence of insurance. The letter made clear the District's waiver of insurance requirements was only for the remaining term of existing contracts.

On March 3, 1986, the District notified Taylor by letter that it was reducing its insurance requirements for the 1986-1987 school year. The District would require $5 million in general liability and comprehensive automobile liability insurance and $100,000 uninsured motorist coverage. The letter noted Taylor had indicated a willingness to meet these requirements and a desire to renegotiate for renewal of existing contracts. The District indicated it would enter negotiations for renewal if by March 14, 1986, Taylor supplied a certificate of insurance or a certificate of insurability covering the contract year.

---

[2]The trust was funded with $1 million in government bonds, a $4 million note secured by various trust deeds on property owned by Taylor and Taylor's owner and a $4 million note secured by a security agreement on $6.5 million worth of equipment owned by Taylor and its president.

On March 6, 1986, the District notified Taylor it had received a certificate of insurance from the Mesa Verde Insurance Trust. The District reiterated the insurance coverage required was with an insurance company licensed to do business in California. The letter also noted the self-insurance trust would not be accepted for 1986-1987 contracts.

On March 18, 1986, Taylor advised the District it intended to continue to provide $10 million of coverage either through an insurance trust or insurance company. The District responded on March 21, 1986, informing Taylor that if it wished to provide services for the 1986-1987 school year, it would have to comply with all insurance requirements of the contract and would be required to provide $5 million in coverage with an insurance carrier licensed to do business in California.

On April 15 and 22, 1986, the District advertised for bids on transportation contract No. 67-05-12. Among the myriad conditions and requirements contained in the specifications for bid was one requiring the contractor to insure jointly the liability of the contractor and the District. The specifications required the insurance be written on a per occurrence basis, provide $5 million in comprehensive general liability, $5 million combined single limit coverage and comprehensive automobile liability and $5 million combined single limit coverage. The specifications also required $100,000 in uninsured motorist coverage.

The bid specifications also required as part of the bid response a certificate of insurance or a certificate of insurability. If a certificate of insurability was used, the contractor was required to provide the District a certificate of actual coverage within 10 days of the award of the contract.

On May 21, 1986, the District received from Nationwide Insurance Company a certificate of insurability for Taylor in the amounts and types of insurance required by bid specifications.

On June 16, 1986, District staff reported to the District on the bidding results. Taylor was the low bidder on four bus types in contract No. 67-05-12 and District staff recommended Taylor be awarded contracts for those buses. District staff further recommended the assistant superintendent for business services be given authority to reassign any of the contracts to the second lowest bidder if the low bidder failed to provide the documentation required for safety, service performance or insurance. The School Board accepted these recommendations.

On June 19, 1986, Taylor was notified it was a successful bidder. The letter noted the requirement that all contractors for bus services furnish the

required certificate of insurance by July 1, 1986. Taylor did not file the required certificate. Taylor did, however, forward to the District additional materials concerning its insurance trust. On July 9, 1986, the District replied that the contract specifications required a certificate of insurance and that no exception could be made for Taylor. The letter informed Taylor that since no certificate of insurance had been received the District would be asked to rescind its award to Taylor.

On July 15, 1986, District staff recommended the award to Taylor be rescinded because of the failure to provide the requisite certificate of insurance. District staff requested approval of award to the second lowest bidder. However, since the next lowest bidder could supply only part of the required buses and since insufficient time existed to rebid the contract, it was recommended the contracts be let, without competitive bidding, to other companies.

At a public meeting on July 15, 1986, the School Board considered rescission of the Taylor contract. At that time both the president of Taylor and its counsel were allowed to address the School Board. Taylor requested a continuance to allow its insurance and actuarial consultants to attend the hearing. The request for continuance was denied. Counsel discussed the insurance industry and the efforts of Taylor to secure insurance. Counsel noted Taylor had supplied the District with a substantial amount of material concerning the insurance situation. Counsel explained the nature of the insurance trust and Taylor's belief that the trust provided better coverage than would a contract of insurance.

District counsel noted the District had worked closely with the business office concerning Taylor's insurance trust since the time of conditional waiver of the insurance requirement for Taylor's 1985-1986 contract. Counsel stated she did not believe the contract could be awarded to Taylor without violating competitive bidding laws. Counsel noted the District was aware of business realities and had made a business judgment to require insurance, a requirement the other bidders had met.

Taylor suggested the contracts be rebid with different insurance specifications. District counsel noted school started in September and it was too late to rebid the contracts. Taylor's president argued the insurance trust offered greater security than the contract of insurance required in the bid specifications. District counsel indicated that was Taylor's view, but the District had, in its business judgment, decided to require insurance, other contractors had complied with that requirement and the District had decided to stand by its insurance specifications. The District so voted.

On July 30, 1986, Taylor filed a petition for writ of mandate in the superior court. The trial court defined its task as determining whether the District had abused its discretion in refusing to award a contract to Taylor. The court did not believe its task was to exercise independent judgment and was not sure Taylor was entitled to a hearing before the District on the issues raised. The court found a dispute concerning the adequacy of the insurance trust had existed between the parties for some time and even if a hearing was required, requisite due process was given in this case. The court found Taylor had been given an opportunity to be heard; its position was considered by the District and the District determined not to accept the trust.

On August 20, 1986, a writ of mandate was sought in this court. On August 22, 1986, the writ was denied because the appellate remedy was deemed adequate and because grounds for extraordinary relief had not been demonstrated.

## II

In order to review the denial of the writ of mandamus, it is necessary to determine whether the writ sought was traditional mandamus under Code of Civil Procedure section 1085 or administrative mandamus under Code of Civil Procedure section 1094.5. This determination is essential because the nature of the review undertaken by the trial court and ultimately the Court of Appeal is determined by the nature of the writ.

Neither in its points and authorities below nor in its briefing in this court does Taylor define the writ sought nor the standard of review to be utilized by the trial or appellate court. District contends the applicable writ was traditional mandamus under Code of Civil Procedure section 1085. We agree.

Administrative mandamus under Code of Civil Procedure section 1094.5 cannot be granted unless certain statutorily required conditions are met. One of those conditions is that the administrative order or decision must have resulted from a proceeding in which by law a hearing was required and at which evidence was required to be taken. As will be developed more fully, we conclude a nonresponsive bidder is not entitled to a hearing, as that term is used in Code of Civil Procedure section 1094.5, to address the issue of his compliance with bid specifications. This being the case, a writ of mandamus under Code of Civil Procedure section 1094.5 is not available. The writ sought here, therefore, was traditional mandamus under Code of Civil Procedure section 1085.

■ In an appeal from the denial of a petition for a traditional writ of mandate, the trial court's findings on foundational matters of fact are conclusive. However, with regard to the ultimate question of whether the District or agencies' decision was supported by substantial evidence, the function of the appellate court is the same as that of the trial court, that is, to review the administrative decision to determine whether it is supported by substantial evidence. This court then reviews the findings and actions of the District or agencies and not the findings of the trial court. (*City of South Gate* v. *Los Angeles Unified School Dist.* (1986) 184 Cal.App.3d 1416, 1421-1422 [229 Cal.Rptr. 568]; *Paoli* v. *California Coastal Com.* (1986) 178 Cal.App.3d 544, 550 [223 Cal.Rptr. 792]; *Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 386-387 [146 Cal.Rptr. 892]; *Davis* v. *California Coastal Zone Conservation Com.* (1976) 57 Cal.App.3d 700, 708-709 [129 Cal.Rptr. 417]; Cal. Administrative Mandamus (Cont.Ed.Bar 1966) §§ 15.24-15.26; see also 1987 Supp. §§ 15.24-15.26.)[3]

■ In a mandamus action arising under Code of Civil Procedure section 1085, judicial review is limited to an examination of the proceedings before the agency to determine whether its actions have been arbitrary or capricious, entirely lacking in evidentiary support, or whether it failed to follow proper procedures or failed to give notice as required by law. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29]; *Heist* v. *County of Colusa* (1984) 163 Cal.App.3d 841, 846 [213 Cal.Rptr. 278].)

■ In determining whether evidentiary support is present in a traditional mandamus action, the applicable standard of review is the substantial evidence test. (*City of South Gate* v. *Los Angeles Unified School Dist., supra,* 184 Cal.App.3d at pp. 1421-1422; *Greenebaum* v. *City of Los Angeles* (1984) 153 Cal.App.3d 391, 402 [200 Cal.Rptr. 237].) The court may not reweigh the evidence and must view the evidence in the light most favorable to the District's actions and indulge all reasonable inferences in support thereof. (*Goggin* v. *State Personnel Bd.* (1984) 156 Cal.App.3d 96, 102-103 [202 Cal.Rptr. 587].)

Substantial evidence has been defined as relevant evidence that a reasonable mind might accept as adequate support for a conclusion. (*Goggin* v.

---

[3] We elect not to follow that line of cases which holds appellate review after the grant or denial of a traditional writ of mandamus involves whether the trial court's determination is supported by substantial evidence. (See *Blinder, Robinson & Co.* v.*Tom* (1986) 181 Cal.App.3d 283, 299 [226 Cal.Rptr. 339]; *Coffey* v. *Governing Board* (1977) 66 Cal.App.3d 279, 288 [135 Cal.Rptr. 881] [disapproved on other grounds]; *Centinela Valley Secondary Teachers Assn.* v. *Centinela Valley Union High Sch. Dist.* (1974) 37 Cal.App.3d 35, 38 [112 Cal.Rptr. 27].)

*State Personnel Bd., supra,* 156 Cal.App.3d at p. 102.) ■ A presumption exists that an administrative action was supported by substantial evidence. (*Barnes* v. *Personnel Department* (1978) 87 Cal.App.3d 502, 505 [151 Cal.Rptr. 94].) The burden is on the appellant to show there is no substantial evidence whatsoever to support the findings of the District. (*Pescosolido* v. *Smith* (1983) 142 Cal.App.3d 964, 970 [191 Cal.Rptr. 415].)

■ The task for this court then is to review the actions of the District in declaring Taylor a nonresponsive bidder. Were requisite procedures followed and was the determination of nonresponsiveness supported by substantial evidence?

■ ■ ■ Taylor contends the procedures due were those defined in *City of Inglewood-L.A. County Civic Center Auth.* v. *Superior Court* (1972) 7 Cal.3d 861, 870-871 [103 Cal.Rptr. 689, 500 P.2d 601], for the determination that a bidder was nonresponsible.[4] The court in *City of Inglewood* held that before a contract could be awarded to other than the lowest bidder, where the law required the lowest bidder receive the award, the public body must (1) notify the low monetary bidder of any evidence reflecting upon his responsibility received from others or adduced as a result of independent investigation, (2) afford the bidder an opportunity to rebut such evidence and (3) permit him to present evidence that he is qualified to perform the contract. (*Ibid.*)

In *City of Inglewood,* in response to the bidder's contention that due process required a hearing including a full panoply of judicial trial procedures, including pleadings, cross-examination and formal findings, the court stated: "We do not believe, however, that due process compels a quasi-judicial proceeding prior to rejection of the low monetary bidder as a nonresponsible bidder." (7 Cal.3d at p. 871.)

Contrary to the assertions of Taylor, we do not believe a determination of nonresponsiveness and a finding of nonresponsibility are equivalent and require the same level of due process. A bid is responsive if it promises to do what the bidding instructions demand. A bidder is responsible if it can perform the contract as promised. (*James Luterbach Constr. Co.* v. *Adamkus* (7th Cir. 1986) 781 F.2d 599, 601.)

A determination that a bidder is responsible is a complex matter dependent, often, on information received outside the bidding process and

---

[4]Responsibility means the fitness, quality and capacity of the bidder to satisfactorily perform the proposed work. (*City of Inglewood-L.A. County Civic Center Auth.* v. *Superior Court, supra,* 7 Cal.3d at p. 867.)

requiring, in many cases, an application of subtle judgment. Not only is the process complex, but the declaration of nonresponsibility may have an adverse impact on the professional or business reputation of the bidder. Such circumstances reasonably require the procedures defined in *City of Inglewood*.

A determination of nonresponsiveness on the other hand is less complex. The district or agency has, before soliciting bids, exercised its business and governmental judgment in defining a set of requirements for the work to be done. Responsiveness can be determined from the face of the bid and the bidder at least has some clue at the time of submission that problems might exist. In most cases, the determination of nonresponsiveness will not depend on outside investigation or information and a determination of nonresponsiveness will not affect the reputation of the bidder. Given the predetermination of bid specifications, and given the more apparent and less external nature of the factors demonstrating nonresponsiveness, less due process is reasonably required with that determination than when nonresponsibility is declared.

While it is true that bids specifications, and indeed inherent discretionary power, allow a board or agency to disregard minor or insubstantial variations from bids specifications, such determination still does not have, in most cases, the complex and external nature of a determination of nonresponsibility.

That the procedures defined in *City of Inglewood* are applicable only to situations where responsibility is involved, is illustrated by *Educational & Recreational Services, Inc.* v. *Pasadena Unified Sch. Dist.* (1977) 65 Cal.App.3d 775 [135 Cal.Rptr. 594]. In that case, the court dealt with former Education Code section 16802, a section now embodied in Education Code section 39802.

*Educational & Recreational Services, Inc.,* involved the award of a transportation contract to other than the low bidder. The low bidder sought a writ of mandate, arguing Education Code section 16802 required the contract be awarded to it. The court held the school board was not required to award the contract to the lowest bidder. However, the court also determined such an award could not be made arbitrarily and the school board was required to consider the factors relevant to the contract award and to act within its discretion in choosing to accept other than the lowest bidder.

(*Educational & Recreational Services, Inc.* v. *Pasadena Unified Sch. Dist.,* *supra,* 65 Cal.App.3d at pp. 780-784.)

Pertinent to the present case, the court held that due process requirements defined in *City of Inglewood* for dealing with determinations of nonresponsibility were not applicable to a decision to reject a low bidder under Education Code section 16802.

We believe a determination of nonresponsiveness is more akin to the decision to reject a low bidder than it is to a declaration of nonresponsibility. We hold that a bidder determined to be nonresponsive is entitled to notice of that fact and is entitled to submit materials, in a manner defined by the district, concerning the issue of responsiveness. The district is not required to conduct a hearing, however, and need not produce findings.

■ In the present case, Taylor was clearly given requisite due process. Taylor was first notified of the District's concern with the use of an insurance trust during the 1985 school year when the District informed Taylor such a trust did not comply with the insurance requirements of the contract. The School Board, with its back to the wall, granted a variance but made clear that insurance would be required for future contracts. In so acting, the record indicates the District reviewed material submitted by Taylor concerning the insurance trust, the insurance situation then existing and its own needs and risks.

When the bid specifications were created for the 1986-1987 school year, the District did not include insurance trusts as an alternative to the insurance requirement. Correspondence had continued between the parties concerning insurance trusts and their utilization as an alternative to insurance. The District repeatedly, and in several forms, made clear to Taylor its continued dissatisfaction with the use of Taylor's insurance trust as an alternative to insurance. The bid specifications specifically required a certificate of insurance within 10 days of the award of the contract. When Taylor, after receiving a conditional award, did not comply, the District staff informed Taylor it would recommend rescission of conditional award of the contract at a specified board meeting. At the meeting, Taylor was allowed to again present materials and to appear to present whatever arguments it wished. Taylor, clearly, was provided requisite due process.[5]

---

[5] Indeed, we conclude the notice given and procedures followed in this case would have substantially complied with the requirements of *City of Inglewood*. Taylor was on notice the

██ Taylor would nevertheless argue the rejection of its insurance trust was an abuse of discretion. It was not. Taylor contends the rejection of its trust was based solely on the fact its offer of an insurance trust was nominally at variance with the bid specifications and the District did not consider, nor act, on Taylor's claim that the insurance trust was an equal or better device to insure the District's interests.

Taylor's argument is based on certain impromptu statements by District counsel at the hearing where the conditional award to Taylor was rescinded. Taylor interprets these comments as agreement with Taylor's position that its insurance trust was an equivalent or better device for shielding the District from liability. We do not agree with this interpretation of the District's position.

Comments by counsel, read as a whole and in the context of what had gone before, indicate that while the District was justifiably concerned that accepting Taylor's insurance trust in lieu of a contract of insurance might amount to a violation of competitive bidding requirements, it was also concerned with the insurance trust itself and whether the trust would provide the District the protection required. Chief among its concerns was that the trust would be available for all claims against Taylor, not just those involving District contracts. Moreover, unlike an insurance policy, it could be depleted by a single incident, leaving no funds available for future claims. The District, thus, had two concerns, the nature of the insurance offered by Taylor and its variance from bid specifications.

The District, against its will, had been given, over many months, a course in insurance trusts by Taylor. The District's counsel and staff had reviewed the trust and had sought the advice of insurance experts. Having so reviewed the matter, the District prepared bid specifications requiring certain levels of certain types of insurance and did not include as an alternative the submission of an insurance trust.

Taylor's trust may be an ingenious device for protecting itself and its customers. However, it is inescapable that it is fundamentally different from insurance and entails the acceptance of different risks. We cannot say, that given the review of the matter undertaken by the District, given the very real possibility that acceptance of Taylor's bid and its insurance trust would

---

District was not prepared to accept the insurance trust. The District's objections were not a mystery and Taylor was given several opportunities to present its position on the trust.

have violated bid competition laws, and given the obvious difference between the insurance sought and the trust offered, the District abused its discretion in rejecting Taylor's bid.

### III

■ Taylor argues when the District awarded the contracts for the 1986-1987 school year, it was without the authority to later rescind the contracts even though Taylor did not comply with the requirement that within 10 days of award a certificate of insurance be supplied.

·Taylor relies on the general rule that a contract is complete and binding when a valid bid is accepted. (*Menefee* v. *County of Fresno* (1985) 163 Cal.App.3d 1175, 1178 [210 Cal.Rptr. 99].) However, this rule is subject to the exception that the parties may make the creation of a contract subject to a condition precedent. (See *Contra Costa etc. Dist.* v. *Nat. Surety Corp.* (1952) 112 Cal.App.2d 61, 65-67 [246 P.2d 150]; see also 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 142-144, pp. 166-169.) In the present case the award of a contract to Taylor was clearly conditioned on the receipt of a certificate of insurance. The District had spent months dealing with Taylor's insurance trust and had repeatedly rejected such a device as an alternative to insurance. The very purpose of the requirement that a certificate of insurance be presented was to avoid such problems in the future. The submission of the certificate of insurance was a condition precedent to formation of the contract. The certificate was not supplied in the time allowed and no contract was formed.

### IV

■ Finally, Taylor argues the District was required, after declaring Taylor disqualified, to open for rebid the contracts conditionally awarded to it. Competitive bidding is a mandatory requirement in the award of transportation contracts by school districts. (Ed. Code, § 39802.) Since the requirement is tied to a policy of insuring efficient, economic and responsible government, if those goals would be offended by competitive bidding the bidding requirement yields. (*Graydon* v. *Pasadena Redevelopment Agency* (1980) 104 Cal.App.3d 631, 635-636 [164 Cal.Rptr. 56]; *Meakin* v. *Steveland, Inc.* (1977) 68 Cal.App.3d 490, 498 [137 Cal.Rptr. 359].)

With the disqualification of Taylor, the school district faced a problem. District staff informed the District the next lowest bidder for the 48 bus

contract originally awarded to Taylor could supply only 20 of the needed buses. The other buses would have to be sought from unsuccessful bidders on other routes. Inquiries had been made by staff and it was determined the needed buses could be secured. District staff, however, indicated with school starting in September, it was too late to advertise for, screen and award new contracts. (The original invitation for bids was first advertised on April 15, 1986, and contracts conditionally awarded on June 16, 1986.)

Given the need for buses and the lateness of the hour, the District could properly forego the requirements for competitive bidding for the remaining buses needed to cover the contract originally awarded to Taylor.

Judgment affirmed.

Wiener, Acting P. J., and Butler, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 20, 1988.