Filed 1/28/14; pub. order 2/13/14 (see end of opn.); reposted to attach pub. order

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BAY CITIES PAVING & GRADING, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF SAN LEANDRO, <br><br> Defendant and Respondent, <br><br><br> OLIVER DESILVA, INC., <br><br> Real Party in Interest, and Respondent. | A137971 <br><br> (Alameda County Super. Ct. No. RG12657020) |

## I. INTRODUCTION

Appellant Bay Cities Paving & Grading, Inc. (hereafter appellant or Bay Cities) appeals from an order and judgment denying its petition for a writ of mandate. Pursuant to that petition, Bay Cities challenged the action of the City of San Leandro (hereafter City) in awarding a public works contract to a competing contractor, real party in interest and respondent Oliver DeSilva, Inc., dba Gallagher & Burk (hereafter G&B), the lowest bidder on the project. Bay Cities, the second lowest bidder, alleged that the City could not properly award the contract to G&B because a missing page in G&B's bid was a material deviation from the contract specifications. We reject this contention and therefore affirm the judgment.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 4, 2012,[1] the City approved plans and specifications for the construction of a "BART-Downtown Pedestrian Interface Project along San Leandro Boulevard" and called for bids on that project. Prospective bidders were notified of the project requirements which included submitting a proposal, and using a standard form provided by the City, along with a bid deposit securing the bidder's proposal. This security could be in the form of cash, a cashier's or certified check or a bidder's bond executed by an authorized surety company.

The City provided prospective bidders with a "Contract Book" for the project which contained, among other things, copies of the required proposal form and of the City's standard form of bid bond. (JA 141) The proposal form stated that the "completed proposal form shall be submitted in its entirety," and "shall be accompanied by a bidder's bond executed by an admitted surety insurer, naming the City of San Leandro as beneficiary. . . . [¶] . . . The form of Bidder's Bond to be used [is] included with the proposal form."[2]

On October 23, the City opened the bids it had received for this project. All of the bidders submitted bid bonds as security for their bids. The lowest bid on the contract was submitted by G&B in the amount of $4,846,700. Bay Cities submitted the second lowest bid in the amount of $5,359,725, i.e., over $500,000 more than the G&B bid.

However, the bid package that G&B had submitted was missing page 33, which was the first page of its bid bond. G&B's bid package did include the second page of the bond (page 34 of the entire bid), which contained the signatures of both the surety's attorney-in-fact and G&B's president, as well as notary certificates for both signatures.

---

[1] Unless otherwise noted, all further dates are in 2012.

[2] The "Specifications" section of the contract book also included the following provision: "The bidder's bond shall conform to the bond form in the Bid book for the project and shall be properly filled out and executed. The bidder's bond form included in that book may be used."

2

On October 23, G&B submitted the first page of its bid bond to the City, albeit after the sealed bids had been opened.

On October 26, Bay Cities filed a bid protest with the City; it argued that G&B's bid was "nonresponsive and must be rejected" because of the omitted page of G&B's bid bond. On October 30, G&B's attorney wrote the City, stating that his client's initial failure to include the first page of the two-page bid bond "was due to an inadvertent error," and continued by noting that the City "may waive this irregularity and award the contract to G&B" because "the irregularity is minor and waivable by the City . . . ." That letter continued by citing legal authorities G&B's counsel contended supported that position.

In an October 31 letter, City engineer Mark Goralka acknowledged receipt of Bay Cities' bid protest but notified it that the City had determined that G&B's bid was accompanied by an enforceable bond and that the omission of the cover page of the two-page bid bond "can be waived as an inconsequential bid defect." Goralka also advised that the City would proceed with awarding the contract to G&B.

On November 19, the City received a letter from G&B's bid bond surety, Travelers Casualty and Surety Company, confirming that the bid bond it had issued in connection with the project "was approved and authorized by" it, and that the omission of the first page of the bond from G&B's bid package "did not affect our commitment under the bid bond."

That same day, the City Council of San Leandro unanimously adopted a resolution which identified G&B's bid as the lowest responsible bid for the project, rejected all other proposals or bids, waived "any irregularities in the proposal or bid of" G&B, and awarded the contract for the project "to the lowest responsible bidder therefore, to wit, [G&B] . . . ." The November 19 resolution also established that if G&B was unable to execute the contract for this project, the City Manager was authorized to award the project to the next lowest responsible bidder and to "take all actions necessary to recover any bid security from the low bidder necessary to make the City whole in its acceptance of the lowest bid."

The following day, November 20, appellant filed a petition for a writ of mandate and a complaint in the Alameda County Superior Court. It also filed an Ex Parte Application for a Temporary Restraining Order contesting the City's award of the contract to G&B. The trial court conducted a hearing on that application on November 26; two days later it denied appellant's request for a temporary restraining order.

On January 16, 2013, that court held a hearing on appellant's petition for a writ of mandate and, a week later, denied it. In its January 23, 2013, order, the trial court stated: "The City of San Leandro put out a project to bid and all prospective bidders were required to submit a bid bond with their bids. The City provided all prospective bidders with a form Bid Bond. Gallagher & Burk submitted a bid that failed to include page 33 (the terms of the form bid bond) but included page 34 (the signature page for the bid bond). The City staff concluded that the bid bond was enforceable (Letter of 10/31/12) and the City Council formally waived the irregularity and accepted the bid (Resolution dated 11/19/12.) [¶] The court finds substantial evidence to support the City's decision that Gallagher & Burk's failure to submit page 33 with its bid package was a 'minor irregularity' not affecting the amount of the bid that did not give Gallagher & Burk an advantage or benefit not allowed to other bidders. (Notice to Bidders, para 10, 27.) The bid bond was a form document so that it was apparent that the signature page 34 referred to the prior text [on] page 33. In addition the signature page independently identified the project at issue. The City reasonably concluded that a court would read page 34 in the context of the form bid bond and enforce the bid bond. (Civil Code 1647.)"

On January 23, 2013, the trial court filed a judgment denying Bay City's petition for writ of mandate. On February 21, 2013, appellant filed a timely notice of appeal.

### III. DISCUSSION

A.      *Standard of Review*

"Appellate review of the award of a public contract is governed by certain well-established principles. In a mandamus action arising under Code of Civil Procedure section 1085, we limit our review to an examination of the proceedings before the agency to determine whether its findings and actions are supported by substantial evidence.

4

[Citations.] 'Our review is limited to an examination of the proceedings to determine whether the City's actions were arbitrary, capricious, entirely lacking in evidentiary support or inconsistent with proper procedure. There is a presumption that the City's actions were supported by substantial evidence, and [petitioner/plaintiff] has the burden of proving otherwise. We may not reweigh the evidence and must view it in the light most favorable to the City's actions, indulging all reasonable inferences in support of those actions. [Citations.] Mandamus is an appropriate remedy to compel the exercise of discretion by a government agency, but does not lie to control the exercise of discretion unless under the facts, discretion can only be exercised in one way. [Citations.]' [Citation.]" (*MCM Construction, Inc. v. City and County of San Francisco* (1998) 66 Cal.App.4th 359, 368 (*MCM*); see also *Ghilotti Construction Co. v. City of Richmond* (1996) 45 Cal.App.4th 897, 900 (*Ghilotti*).)

In its briefs to us, appellant argues that the standard of review in this case is primarily the "independent judgment" test. To the extent our disposition of this appeal requires us to decide questions of statutory interpretation or to determine whether the City's action violated a relevant law, we exercise our independent judgment. (*Schram Construction, Inc. v. Regents of the University of California* (2010) 187 Cal.App.4th 1040, 1052; see also *Associated Builders and Contractors, Inc. v. San Francisco Airports Comm.* (1999) 21 Cal.4th 352, 361; *Valley Crest Landscape, Inc. v. City Council* (1996) 41 Cal.App.4th 1432, 1437 (*Valley Crest*).) However, as we will explain, the dispositive issue in this case is a factual one which we review under the substantial evidence standard.

**B.** *Legal Principles*

" 'Generally, cities, as well as other public entities, are required to put significant contracts out for competitive bidding and to award the contract to the lowest responsible bidder. [Citation.] A bidder is responsible if it can perform the contract as promised. [Citation.] A bid is responsive if it promises to do what the bidding instructions require. [Citation.]' " (*MCM, supra*, 66 Cal.App.4th at p. 368.)

5

" 'A basic rule of competitive bidding is that bids must conform to specifications, and that if a bid does not so conform, it may not be accepted. [Citations.] However, it is further well established that a bid which substantially conforms to a call for bids may, though it is not strictly responsive, be accepted if the variance cannot have affected the amount of the bid or given a bidder an advantage or benefit not allowed other bidders or, in other words, if the variance is inconsequential. [Citations.]' [Citations.]" (*Ghilotti, supra*, 45 Cal.App.4th at p. 904.)

" 'The importance of maintaining integrity in government and the ease with which policy goals underlying the requirement for open competitive bidding may be surreptitiously undercut, mandate strict compliance with bidding requirements. [Citation.]' [Citation.]" (*MCM, supra*, 66 Cal.App.4th at p. 369.) However, the rule that requires " 'strict compliance with bidding requirements does not preclude the contracting entity from waiving inconsequential deviations.' [Citation.]" (*Ibid.*; *Ghilotti, supra,* 45 Cal.App.4th at p. 908.) Rather "a deviating bid must be set aside despite the absence of corruption or actual adverse effect on the bidding process" only if the deviation is "capable of facilitating corruption or extravagance, or likely to affect the amount of bids or the response of potential bidders. [Citations.]" (*Ghilotti, supra*, 45 Cal.App.4th at p. 908.)

In the present case, appellant does not dispute the authority summarized above which establishes that the City has the discretion to "waive inconsequential deviations from contract specifications in a public contract bid." (*Ghilotti, supra,* 45 Cal.App.4th at p. 900.) Indeed, in this case, the City's discretion to waive inconsequential or nonmaterial defects in the bids submitted for this public contract project was expressly confirmed in both the San Leandro Municipal Code and in provisions of the "Notice to Bidders" that was issued for this specific project.[3]

---

[3] The San Leandro Municipal Code contains a provision which reads: "AWARD TO LOWEST RESPONSIBLE BIDDER. Except as otherwise provided herein, the City shall award a contract for a Public Works project to the lowest responsible bidder whose bid complies with the specifications. In determining responsibility, the City shall

However, appellant does contend that the defect in G&B's bid was material and could not be waived. Thus, the question raised by this appeal is whether the City abused its discretion by waiving the deviation in the G&B bid as inconsequential. The question " '[w]hether in any given case a bid varies substantially or only inconsequentially from the call for bids is a question of fact.' [Citation.]" (*Ghilotti, supra,* 45 Cal.App.4th at p. 906.) As reflected in the authority summarized above, "[t]o be considered inconsequential, a deviation must neither give the bidder an unfair competitive advantage nor otherwise defeat the goals of insuring economy and preventing corruption in the public contracting process." (*Id.* at p. 900.)

"These considerations must be evaluated from a practical rather than a hypothetical standpoint, with reference to the factual circumstances of the case. They must also be viewed in light of the public interest, rather than the private interest of a disappointed bidder. 'It certainly would amount to a disservice to the public if a losing bidder were to be permitted to comb through the bid proposal or license application of the low bidder after the fact, [and] cancel the low bid on minor technicalities, with the hope of securing acceptance of his, a higher bid. Such construction would be adverse to the best interests of the public and contrary to public policy.' [Citation.]" (*Ghilotti, supra,* 45 Cal.App.4th pp. 908-909.)

---

consider the known reliability, resources, experience, integrity and the reputation for workmanship of the various bidders. The City may waive any informalities or minor irregularities in bids received." (San Leandro Mun. Code, §1-5-225.)

Furthermore, the "Notice to Bidders" sent out by the City to the prospective bidders contained two provisions specifically allowing the City to waive minor irregularities. Section 10 of that document read: "CITY'S RIGHT TO REJECT BIDS: The right is reserved, as the interest of the City may require, to reject any and all bids, or to waive any informality or minor irregularity in the bids." Section 27, the final provision of the "Notice to Bidders," then concludes with this sentence: "The City reserves the right to waive any bid irregularities not affecting the amount of the bid, except where such waiver would give the low bidder an advantage or benefit not allowed other bidders."

7

**C.** *Analysis*

The only alleged deviation from competitive bidding requirements that we address in this appeal is that one page of G&B's bid bond was missing from the bid it originally submitted in connection with this project. Appellant contends the City exceeded or abused its discretion by waiving this bid irregularity.

Providing a bid security was both a specification of this project as well as a requirement imposed by law. (See, e.g., San Leandro Mun. Code, § 1-5-220; Pub. Contract Code, §§ 20170, 20171.)[4] However, the City determined that the missing page of the G&B bond was an inconsequential deviation from the bidding requirements for this project because the second page of that two-page bid bond, which was included in G&B's original sealed bid package, provided sufficient information to assure the City that G&B had complied with the bid security requirement. Substantial evidence supports the City's determination.

Substantial evidence establishes that G&B used the City's standard bid bond form. The City provided all prospective bidders with this standard form and the bidders were instructed if not required to use that form if they elected to provide a bond as their bid security. Furthermore, the bid package that G&B initially submitted contained page two of G&B's two-page bid bond, and the pre-printed text on this form mirrored the bid-bond form that the City had generated for this specific project. Among other things, that text identified the document as a "Bid Bond" for the "Bart-Downtown Pedestrian Interface" project, and it included the City's project number for the project. From this information, the City was able to determine that G&B had used the City's standard form bid bond.

---

[4] "Although provisions for forfeitures in the nature of a penalty are generally not favored [citation], 'the right of municipalities to require guarantee deposits to accompany bids, and to forfeit them in the event of the failure or refusal of the successful bidder to enter into the contract, has long been upheld.' [Citation.] Such, 'provisions requiring a deposit accompanying a bid for city contracts, or for forfeiture thereof, are necessary as a matter of public policy . . . .' [Citation.]" (*A & A Electric, Inc. v. City of King* (1976) 54 Cal.App.3d 457, 466.)

8

By the same token, the material provided in G&B's original bid, which included the second page of its bid bond, was sufficient to establish that G&B satisfied the bid security requirement by actually obtaining the required bid bond from an approved surety. The City's standard bid bond was, as the trial court phrased it, a "form document" which required only a few insertions by the specific bidder.[5] The first page, i.e., the page that was originally missing, contained only three blank places for the insertion of additional information: (1) the name of the principal (i.e., the bidder), (2) the name of the surety, and (3) the date of the submission of the bid.

Regarding item (3), there can be no dispute that the City had actual notice of the date the G&B bid was submitted.[6] The first two items of information were provided on the second page of the bid bond, i.e., the page that *did* accompany the bid of G&B. The first open lines on that page required the name of the "principal," i.e., the bidder, a signature, and the "title" of the signing party. The other open lines on that page were for the naming of the surety, along with its address, phone and fax numbers, and the name and title of the attorney-in-fact signing for that surety. All this information was provided on the second page of the bid bond which did, in fact, accompany the G&B bid. All the rest of the written material on page one of the two-page bid bond form was standard material and thus well-known to the City. In short, when the City determined which contractor was the lowest responsible bidder it had before it the information needed to make clear that G&B had, indeed, satisfied the requirement of supplying the requisite bid bond.

---

[5] Several documents filed in the trial court by appellant in support of its petition for a writ of mandate specifically confirm that the City required that the " 'bidder's bond shall conform to the bond form in the Bid book for the project . . . .' "

[6] Appellant contends that the date on the second page of the G&B bond, October 10, 2012, was actually the "wrong date." To support this claim, appellant points out that the first page of the bond, which G&B submitted after bid opening, states that G&B submitted its bid on October 16, 2012. Contrary to appellant's suggestion on appeal, there was nothing suspicious or wrong about these dates. It appears to us that October 10 was the date the bond was executed while October 16 was the date the bid was submitted.

Appellant does not dispute the substantial evidence supporting the City's determination in this case but, instead, attempts to lessen its impact by characterizing the issue on appeal as a question of law, subject to de novo judicial review. However we are not persuaded by appellant's various legal theories.

Appellant's first theory is that the City's attempted contract with G&B is null and void as a matter of law because G&B's failure to provide a bidder's bond violated a statutory requirement. (Citing, e.g., *Miller v. McKinnon* (1942) 20 Cal.2d 83, 87-88.) Thus, it argues: "Because G&B's bid did not include the mandatory bid security at bid time, G&B's bid was incomplete and materially non-responsive and, consequently, ineligible for award." Such was so, appellant argues, because "there was an utter lack of bid security because there were no terms to which the surety was agreeing to be bound." Appellant reiterates this argument in its reply brief, contending numerous times that there was no "valid bid bond" or "no enforceable bid bond" supplied with G&B's bid.

Appellant's legal rule is inapposite, however, because the City found that G&B did secure its bid with a bid bond. And, as noted above, that determination is supported by substantial evidence. Thus, the record undermines appellant's premise that G&B completely failed to comply with the bid bond requirement.

Appellant next contends that the question of whether the absence of the face page of G&B's bid bond from its original bid package rendered the bond unenforceable was a question of law. To support this argument, appellant relies on authority reflecting the general principle of contract law that the interpretation of a contract is a judicial function. (Citing, e.g., *Parsons v, Bristol Development Co.* (1965) 62 Cal.2d 861, 865; Civ. Code §§ 1635-1661.) However, this principle had no bearing on the specific determination by the City which is the subject of this appeal. At that stage in the process, the City was not required to interpret any substantive provision in any of the bonds submitted by the bidders on this project, but only to determine whether the bidders complied with the bid security requirement. Here, substantial evidence supports the City's finding that G&B did substantially comply with that requirement, notwithstanding that a page of documentation was missing from its original bid package.

10

Changing its tack, appellant contends that the City committed legal error by using its standard bid bond form to supply information that was missing from G&B's bid package. As reflected in our factual summary, that standard form was included in the City's bid book for this specific project and was supplied to all of the bidders. Nevertheless, appellant contends the City committed legal error by looking at that form when it evaluated the bids. According to appellant, the City's award determination had to be based solely and exclusively on information within the four corners of G&B's original bid. However, appellant fails to provide any authority imposing such a strict restriction on the City in this context.

Specifically, appellant erroneously relies on *Taylor Bus Service, Inc. v. San Diego Bd. Of Education* (1987) 195 Cal.App.3d 1331 (*Taylor Bus*). That case involved a public contract for school bus transportation in a San Diego school district. Appellant was the low bidder and was conditionally awarded the contract. However, the district subsequently rescinded the conditional award after finding that appellant failed to comply with competitive bidding requirements. Thereafter, the trial court denied appellant's petition to compel the district to reverse its decision and award the contract to appellant. The *Taylor Bus* court affirmed the trial court's denial of the petition.

The first issue addressed in *Taylor Bus, supra*, 195 Cal.App.3d at page 1341, was whether the school district violated appellant's constitutional right to due process by rescinding the conditional award without first conducting a hearing. In concluding that no such hearing was required, the court noted, among other things, that a public agency's determination whether a contract bid is responsive is materially less complex than the question whether a bidder on a public contract is responsible. In this context, the court observed that "[i]n most cases, the determination of nonresponsiveness will not depend on outside investigation or information . . . ." (*Id*. at p. 1342.) The *Taylor Bus* court also stated that, notwithstanding a public agency's "inherent discretionary power" to disregard minor or insubstantial variations from bid specifications, the determination whether a bid is responsive "does not have, in most cases, the complex and external nature of a determination of nonresponsibility." (*Id*. at p. 1342.)

11

The *Taylor Bus* appellant also claimed that, even if it was afforded due process, the school district abused its discretion by determining that appellant's bid was non-responsive and rescinding the conditional award of the contract to appellant. (*Taylor Bus, supra*, 195 Cal.App.3d. at p. 1344.) In addressing this claim, the court applied a substantial evidence standard of review, noting that the burden was on the appellant to "show there is no substantial evidence whatsoever to support the findings of the District." (*Id*. at pp. 1340-1341.) Ultimately, the court concluded that the findings of the district were supported by substantial evidence and, therefore, it did not abuse its discretion. (*Id*. at pp. 1344-1345.)

*Taylor Bus, supra,* 195 Cal.App.3d 1331, does not support any aspect of appellant's arguments on appeal. First, by noting that the responsiveness of a bid can often be determined without "outside investigation," (*id.* at p. 1342) the court did not hold or in any way imply that a public agency violates the law by using contract materials generated for the specific project to evaluate whether a bid is responsive or not. Second, although *Taylor Bus* addressed very different issues, it clearly confirms our conclusion in this case that the substantial evidence standard of review applies to appellant's contention that the City abused its discretion by awarding the BART contract to G&B.

Appellant's most developed theory on appeal is that the defect in G&B's bid could not properly be waived as an inconsequential or immaterial deviation because it gave G&B an advantage or benefit over other bidders. As noted at the outset of our discussion, a bid defect cannot be considered inconsequential if it gives the bidder an unfair competitive advantage. (*Ghilotti, supra*, 45 Cal.App.4th at p. 900.) Here, appellant contends that, as a matter of law, G&B enjoyed such an advantage. To support this theory, appellant relies primarily on *Valley Crest, supra,* 41 Cal.App.4th 1432.[7]

---

[7] Appellant also relies on federal decisions, including U.S. Court of Claims decisions, in support of its position that G&B's bid was fatally defective. However, there is clearly adequate California authority to permit us to decide this case and thus no need to consider federal administrative law decisions. (See, e.g., *Allegretti & Co. v. County of Imperial* (2006) 138 Cal.App.4th 1261, 1274 and *Howard Contracting, Inc. v. G.A. MacDonald Construction Co., Inc.* (1998) 71 Cal.App.4th 38, 52.) As one of our sister

12

*Valley Crest, supra*, 41 Cal.App.4th 1432, was a mandate proceeding involving a "park project" for the city of Davis. Specifications for the project required that the bidder perform at least 50 percent of the work itself and that it "set forth the percentage of work to be performed by each subcontractor." (*Id.* at p. 1435.) However, the low bidder on the project, North Bay, submitted a bid which indicated that 83 percent of the work would be done by subcontractors. Valley Crest, the second lowest bidder, objected that North Bay's bid was nonresponsive. The city engineer called this point to North Bay's attention, and gave it the opportunity to supplement its bid with additional information, noting that if no other information was provided, he would recommend that North Bay's bid be deemed unresponsive and that the contract be awarded to Valley Crest. (*Ibid.*) North Bay responded that the percentages in its bid were not correct and submitted new percentages totaling 44.65 percent. After the city awarded the contract to North Bay, Valley Crest filed a petition for a writ of mandate to set aside the contract which the trial court denied. (*Ibid.*)

The *Valley Crest* court reversed the trial court's decision, finding that the North Bay bid contained a material defect that the city could not properly waive. (*Valley Crest, supra*, 41 Cal.App.4th 1432.) The court reasoned that the subcontractor percentage requirement, although not a requirement of Public Contact law, was nevertheless a material element of the contract specifications for the project. Furthermore, North Bay's bid defect was not a minor variance from that specification; it failed to comply with that requirement. This mistake was material, the court found, because it gave North Bay an unfair advantage in the bidding process by establishing a ground for North Bay to

courts recently observed: "Because of its relation to the public treasury and its bearing on the public interest, public contracting law has deservedly received considerable attention from the courts [of this state]." As that court further observed, "the case law [of California] bearing on public contract bidding is remarkably consistent." (*Great West Contractors, Inc. v. Irvine Unified School Dist.* (2010) 187 Cal.App.4th 1425, 1428, fn. 1, 1447.)

13

withdraw its bid without having to forfeit its bond pursuant to the statutory procedure set forth in the Public Contract Code.[8]

As the court explained, "[m]isstating the correct percentage of work to be done by a subcontractor is in the nature of a typographical or arithmetical error. It makes the bid materially different and is a mistake in filling out the bid. As such, under Public Contract Code section 5103, North Bay could have sought relief by giving the city notice of the mistake within five days of the opening of the bid. That North Bay did not seek such relief is of no moment. The key point is that such relief was available. Thus, North Bay had a benefit not available to the other bidders; it could have backed out. Its mistake, therefore, could not be corrected by waiving an 'irregularity.'" (*Valley Crest, supra,* 41 Cal.App.4th at p. 1442.)[9]

Here, appellant contends that *Valley Crest* mandates reversal of the judgment because it establishes that the City erred as a matter of law. According to appellant, G&B had an unfair advantage in the bidding process because the defect in its bid would have allowed it to reject the project without incurring liability under its bidder's bond. This claim appears to be based on two distinct factual theories, both of which are erroneous.

---

[8] The Public Contract Code establishes a procedure pursuant to which a bidder can be relieved of its obligations under a bid because of a mistake. (Pub. Contract Code, §§ 5101, et seq.)

Public Contract Code section 5103 states: "The bidder shall establish to the satisfaction of the court that: (a) A mistake was made. [¶] (b) He or she gave the public entity written notice within five working days, excluding Saturdays, Sundays, and state holidays, after the opening of the bids of the mistake, specifying in the notice in detail how the mistake occurred. [¶] (c) The mistake made the bid materially different than he or she intended it to be. [¶] (d) The mistake was made in filling out the bid and not due to error in judgment or to carelessness in inspecting the site of the work, or in reading the plans or specifications."

[9] In reaching these conclusions, the *Valley Crest* court applied a de novo standard of review to resolve the parties' dispute regarding the proper interpretation of the Public Contract Code statutes at issue in that case. (*Valley Crest, supra*, 41 Cal.App.4th at p. 1437.) In contrast to *Valley Crest*, in this case the City's determination did not hinge on any disputed interpretation of a statute. Thus, we reject appellant's contention that *Valley Crest* establishes that this trial court applied the wrong standard of review.

14

First, appellant argues that the omitted page of G&B's bid gave G&B the actual option of deciding after bid opening whether it wanted to be bound by the bid bond. Under this theory, the only reason that the City had recourse against the G&B bond in the event G&B rejected the public contract was because it permitted G&B to correct its bid after the bid opening by submitting supplemental material, i.e., the first page of its bond. As a consequence, appellant contends, G&B's bid "improperly was supplemented after the bid deadline." To appellant, this allegedly improper supplementation by G&B and the City's acceptance of it proves that G&B had an unfair advantage in the bidding process because, after the bids were submitted and opened, G&B could have elected not to provide the missing page and thereby avoided liability under its bond.

However, this argument misstates the basis upon which the City found that it was proper to award the contract to G&B. Before that award was made, appellant's general counsel had addressed a letter to the City arguing that G&B's bid was "materially defective." The City responded *not* by relying in the slightest on any supplementation theory, but by these statements: "The central issue is whether the material submitted *at bid opening* would constitute a legally enforceable bid bond. It is the City's belief that the bid bond information submitted was enforceable, and that the omission of the bid bond cover page can be waived as an inconsequential bid defect. *The City had the signature of the obligor and the bonding company at bid opening, which would make the bond enforceable.*" (Italics added.)

Thus, the record undermines appellant's contention that the City allowed any sort of "supplementation" of, or belated addition to, G&B's bid. Rather, the City determined that G&B's *original* bid was supported by a valid bid bond. This fact materially distinguishes *Valley Crest, supra*, 41 Cal.App.4th 1432. As discussed above, in that case, North Bay was actually permitted to correct the mistake in its bid before the City accepted it. (*Id*. at pp. 1436-1437.) Nothing comparable to that happened here.

Appellant's second theory is that the very act of omitting a page of the bid bond from the original bid package gave G&B a competitive advantage over other bidders because it created an *opportunity* for G&B to dispute the validity of its bid bond.

15

Appellant reasons that, "while a signature page had been submitted, there were no terms included therewith making any surety liability uncertain and ambiguous at best." Thus, appellant concludes, if G&B had refused to accept the contract for this project, it had the opportunity to avoid liability under its bond by contesting its validity in light of the fact that a page of documentation was missing from the original bid package. This opportunity, appellant contends, gave G&B a competitive advantage that other bidders did not have.

The flaw in this logic comes from characterizing any opportunity to dispute the validity of a bond as a competitive advantage in the bidding process itself. The idea that somebody might attempt to avoid a contractual obligation is not evidence that he has an actual competitive advantage. Indeed, any of the bidders for this project could conceivably have disavowed its contract with the surety that issued its bidder's bond by arguing that the bond was unenforceable for one reason or another. This speculation aside, the City in this case made a factual determination that the omitted page from G&B's original bid package did not create an actual unfair advantage because the information that was submitted established compliance with the bid bond requirement. Appellant cannot undermine that factual determination by relying solely on speculation.

Appellant argues that *Valley Crest*, *supra,* 41 Cal.App.4th at page 1442, "instructs" that "what is relevant is whether a bid deviation provides the bidder the opportunity to avoid being bound," regardless whether the bidder attempted or even intended to withdraw its bid. Thus, appellant insists that it does not matter whether G&B actually secured a bid bond in the first instance or whether that bond was actually enforceable because the mere fact that the defect in G&B's bid gave it an *opportunity* to contest the validity of the bond precluded the City from waiving that defect as a matter of law.

But appellant stretches *Valley Crest* too far. In that case, the mistake in the North Bay bid did not create an opportunity to dispute liability under the bond in the event it withdrew its bid; it established an actual concrete ground for doing so under Public Contract Code section 5103. Indeed, the *Valley Crest* court emphasized that "the key

16

point is that such relief *was available*" under that statute. (*Valley Crest, supra,* 41 Cal.App.4th at p. 1442, emphasis added.) In the present case, by contrast, there is nothing in this record to suggest that G&B could have withdrawn its bid and avoided liability on its bond by invoking Public Contract Code section 5103. That statute applies only when "[a] mistake was made . . . in filling out the bid," and the mistake "made the bid materially different than" the bidder intended. (Pub. Contract Code, § 5103, subds. (a), (c), and (d).)

Appellant concedes that Public Contract Code section 5103, does not apply here. However, appellant contends that the fundamental "rule of law" established by *Valley Crest* is not predicated on Section 5103, but rather on the question whether the bid defect creates an "opportunity" to withdraw a bid without forfeiting the bidder's bond. But appellant's ambiguous conception of such an "opportunity" simply is not a principle of law. As we have already explained, every bidder has the opportunity to attempt to avoid liability under a bid bond by denying its validity. By contrast, an actual competitive advantage arises only when a bid defect establishes an actual ground for a successful bidder to withdraw its bid without incurring liability under its bond. Conceivably, some statute or legal rule other than section 5103 of the Public Contract Code might establish that ground, but appellant fails to identify one. Furthermore, and more to the point, appellant simply ignores the factual component of this inquiry. Here, the City found that the G&B bid defect did not create an unfair competitive advantage because the bid documentation that was originally submitted established that the bid security requirement was satisfied. *Valley Crest* does not alter our conclusion that appellant cannot use speculation to undermine the City's finding.

*Ghilotti, supra*, 45 Cal.App.4th 897, helps to illustrate our point. That case involved competing bids on a road construction project in the city of Richmond. The contract specifications included a provision that the contractor would itself perform " 'contract work amounting to not less than 50 percent of the original total contract price.' " However, the lowest bid, by a company called GBCI, showed that "it would be subcontracting 55.44 percent of the total contract price." (*Id.* at pp. 900-901.) After a

17

protest by the second lowest bidder, the city decided to "waive the 50% requirement as 'nonsubstantive and inconsequential' " and awarded the contract to GBCI. (*Id.* at p. 902.) Thereafter, the trial court issued an order denying a petition for writ of mandate to prevent the city from awarding the contract to GBCI, which the *Ghilotti* court affirmed. (*Id.* at p. 903.)

The *Ghilotti* court emphasized the factual and individualized nature of the inquiry as to whether a bid variation results in an unfair competitive advantage in the bidding process, and ultimately concluded that the appellant had failed to carry its burden on appeal of proving that GBCI had an actual unfair competitive advantage. (*Ghilotti, supra*, 45 Cal.App.4th at pp. 906-907.) In reaching its decision, the court rejected the contention that a bid defect which *only potentially* impacts the amount of the bid or the bidding process was sufficient to establish a competitive advantage that would prevent the city from finding that a bid deviation was inconsequential. (*Id.* at pp. 905-908.)

The *Ghilotti* court also acknowledged that a bid defect cannot be waived if it would allow the bidder to withdraw his bid without forfeiting its bid bond, but it found that the appellant in that case had not relied on this theory in the trial court. (*Ghilotti, supra,* 45 Cal.App.4th at p. 912.) In any event, the *Ghilotti* court rejected the contention that "*Valley Crest* stands for the proposition that a potential competitive advantage precludes waiver of a bid irregularity, without the necessity of showing any actual advantage." (*Ghilotti* at p. 912, fn. 6.) Rather, the reason that the *Valley Crest* court found that the bid deviation in that case gave North Bay a competitive advantage was because North Bay could have obtained relief under the Public Contract Code "as a matter of law," and also because the city in that case expressly gave North Bay the opportunity to withdraw its bid. (*Ghilotti* at p. 912, fn. 6.)

*Ghilotti* reinforces our conclusion, and the conclusion of the trial court, that appellant has failed to carry its burden of proving that the City abused its discretion by awarding the BART contract to G&B. The City's determination that the omitted page of the G&B bid was an inconsequential deviation from the competitive bidding requirements was a factual conclusion supported by substantial evidence. Furthermore,

18

appellant's abstract theory of a potential competitive advantage does not undermine the City's determination or otherwise prove that the City abused its discretion.

A unifying theme running throughout appellant's arguments on appeal is that we must disregard the substantial evidence supporting the City's determination that the G&B bid deviation was inconsequential because that deviation was material as a matter of law. However in making these arguments, appellant repeatedly confuses a rule of law with an issue of law. For example, appellant contends that both *Ghilotti* and *Valley Crest* recognize "the well-established rule of law that a bidder has an unfair advantage over others if it has an opportunity to avoid its bid without penalty." By the same token, however, this authority vividly illustrates that the facts of a given case dictate whether this legal rule applies; in *Valley Crest*, the evidence established that the bidder had the option of withdrawing its bid without penalty, while the evidence in *Ghilotti* did not compel that same factual conclusion.

Finally, appellant mistakenly relies on this court's decision in *MCM, supra,* 66 Cal.App.4th 359. That case involved a public contract for a construction project at the San Francisco Airport. The city rejected as nonresponsive a bid submitted by MCM and awarded the contract to a company that had submitted a higher bid. (*Id.* at p. 366.) MCM filed a petition for a writ of mandate arguing**,** among other things, that the city abused its discretion by refusing to waive allegedly immaterial defects in its bid. (*Ibid.*) The trial court denied the writ petition and this court affirmed.

In our *MCM* decision, we provided two independent reasons for concluding that the city did not abuse its discretion by refusing to waive defects in the MCM bid. (*MCM, supra,* 66 Cal.App.4th at p. 373.) First, even if the deviations in that bid were immaterial, the city was not required to exercise its discretion by waiving those defects. As we explained, "[a]n agency has discretion to waive immaterial deviations from bid specifications and may accept the bid under certain conditions. The point of discretion is that the agency may properly act in either direction. It may waive or refuse to waive such deviations." (*Id.* at p. 374.)

19

The second independent reason that the city was not required to waive the defects in the MCM bid was that the city's *factual determination* that those deviations were material was supported by substantial evidence. (*MCM, supra,* 66 Cal.App.4th at pp. 374-375.) The city had found that the defects in MCM's bid afforded MCM an actual competitive advantage by allowing it to withdraw its bid without having to forfeit its bid bond. (*Id.* at pp. 375-376.) Evidence in the record supporting that conclusion showed that "MCM had not only an *actual* opportunity to withdraw its bid, but also was *entitled* to do so under the provisions of Public Contact Code section 5103." (*Id.* at pp. 376.) In light of this evidence, we affirmed the city's determination that MCM had a competitive advantage not available to other bidders which established that the "City was without power to waive the deviation." (*Id.* at p. 377.)

Appellant purports to find support in our opinion in *MCM*, noting that we said there that "[t]he City was without power to waive the deviation." (*MCM, supra,* 66 Cal.App.4th at p. 377.) However, we reached that conclusion only after affirming the city's *factual* determination that the bid defect in that case was material and not inconsequential. Indeed, we cited *Ghilotti, supra* 45 Cal.App.4th at page 906, for the proposition that the question whether " ' "a bid varies substantially or only inconsequentially from the call for bids is a question of fact." [Citation.]' " (*MCM, supra,* 66 Cal.App.4th at p. 375.) Here, we apply precisely the same rules that we applied in *MCM*, albeit to a very different set of facts.

For all of these reasons, we conclude that appellant has failed to establish that the City abused its discretion by waiving the deviation in G&B's bid as inconsequential.

## IV. DISPOSITION

The judgment and order of the superior court denying appellant's petition for a writ of mandate are affirmed.

20

_____
Haerle, J.

We concur:


_____
Kline, P.J.


_____
Brick, J.*




Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 2/13/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BAY CITIES PAVING & GRADING, INC., | |
|     Plaintiff and Appellant, | A137971 |
| v. | (Alameda County |
| CITY OF SAN LEANDRO, | Super. Ct. No. RG12657020) |
|     Defendant and Respondent, | |
| OLIVER DESILVA, INC., | |
|     Real Party in Interest, and Respondent. | |

BY THE COURT:

The opinion in the above-entitled matter filed on January 28, 2014, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Dated:_____          _____

                                                          Kline, P.J.

Trial Court:  Superior Court of Alameda County

Trial Judge:  Hon. Evelio Grillo

| | |
|---|---|
| Attorneys for Plaintiff and Appellant<br>Bay Cities Paving & Grading Inc. | Chris Andrew McCandless<br>Diepenbrock Elkin |
| Attorneys for Defendant and Respondent<br>City of San Leandro | Benjamin T. Reyes, III<br>Meyers Nave Riback Silver & Wilson |
| Attorneys for Real Party in Interest<br>And Respondent Oliver Desilva Inc. | William Eric Blumhardt<br>Archer Norris |
| Attorneys for Amicus Curiae for Respondent<br>League of California Cities | Clare Marie Gibson<br>Jarvis, Fay, Doporto & Gibson |

A137971, *Bay Cities Paving & Grading, Inc. v. City of San Leandro*