[No. F049526. Fifth Dist. Jan. 10, 2007.]

D.H. WILLIAMS CONSTRUCTION, INC., Plaintiff and Respondent, v. CLOVIS UNIFIED SCHOOL DISTRICT, Defendant and Appellant; EMMETT'S EXCAVATION, INC., Real Party in Interest and Respondent.

[No. F049632. Fifth Dist. Jan. 10, 2007.]

D.H. WILLIAMS CONSTRUCTION, INC., Plaintiff and Respondent, v. CLOVIS UNIFIED SCHOOL DISTRICT, Defendant and Respondent; EMMETT'S EXCAVATION, INC., Real Party in Interest and Appellant.

758

[black redaction block]

[black redaction blocks]

## COUNSEL

Lozano Smith, Jerome M. Behrens, Christine A. Goodrich and Stephen A. Mendyk for Defendant and Appellant and for Defendant and Respondent.

No appearance for Plaintiff and Respondent.

Coleman & Horowitt, Darryl J. Horowitt and Karel G. Rocha for Real Party in Interest and Respondent and for Real Party in Interest and Appellant.

## OPINION

**VARTABEDIAN, Acting P. J.**—This is an appeal from a judgment granting a petition for writ of mandate. The issue before us is whether a bid on a public agency contract can be declared nonresponsive by the public agency when the bidder has listed an unlicensed subcontractor on the bid forms. We

agree with the trial court that such a bid, in the circumstances of the present case, could not be declared nonresponsive. However, the appropriate remedy is for the agency to conduct a due process hearing before awarding the contract to determine whether the bidder is responsible. Accordingly, we reverse the judgment, which simply directed the awarding of the contract to the bidder in question.

### Facts and Procedural History

Appellant Clovis Unified School District (the District) is building a $126 million educational center. Instead of soliciting bids for a single prime contract, the District is using the services of a construction manager and is soliciting bids for multiple prime contracts for various phases of the project. The bids involved in the present case were for the concrete and fencing work at the educational center.

The District solicited bids pursuant to a project manual that contains instructions to bidders, general conditions of bidding, and a mandatory form for listing of subcontractors. Bids were due by March 3, 2005. Five bidders submitted proposals. The bid submitted by respondent D.H. Williams Construction, Inc. (Williams), was the lowest, at $4,419,000. The bid submitted by appellant Emmett's Excavation, Inc. (Emmett), was next lowest, at $4,439,724.

On its form for designation of subcontractors, Williams listed Patch Master of Central California as the subcontractor for "concrete, masonry, sleeves." On February 28, 2005, Patch Master's contractor license had expired. The license had not been renewed at the time bids were opened.

The District notified Williams on March 4, 2005, that "upon checking on the license status of your listed subcontractors, it appears that Patch Master . . . does not have a current and active license." The notice invited Williams to "fax your response to [this] item[]" to the District's purchasing manager. The notice did not purport to reject Williams's bid.

Williams provided the District with a copy of an undated letter from Patch Master refusing the subcontract on this bid package and releasing any claims it may have had as a result of its inclusion in Williams's bid. Williams notified the District it invoked Public Contract Code section 4107, subdivision (a)(3), which permits the public agency to allow substitution of a subcontractor when "the listed subcontractor fails or refuses to perform his or her subcontract." Williams stated that it "will therefore be performing this work with its own forces or requesting substitution as allowed. At this time, Patch Master will not be performing this work."

By facsimile transmitted on March 8, 2005, the District notified Williams that the District's governing board would award the bid for concrete work at its meeting the next day and that staff would recommend rejection of Williams's bid as "non-responsive." At its meeting on March 9, 2005, the governing board accepted Emmett's bid as the "low acceptable" bid and awarded Emmett the contract.

On April 6, 2005, Williams filed its petition for writ of mandate, naming the District as respondent and Emmett as real party in interest. The matter was heard on declarations and documentary evidence on October 14, 2005. The court issued a tentative decision to grant the petition on October 24, 2005, and its statement of decision, judgment, and peremptory writ on December 19, 2005. The judgment canceled and rescinded the contract between the District and Emmett. The judgment and the writ directed the District to stop all work by Emmett, to prepare and award a contract for the remaining work for execution by Williams, and to pay Emmett for work performed "as measured by the provisions of Public Contract Code § 5110."[1]

The District filed a timely notice of appeal. Emmett filed a separate notice of appeal. This court ordered the appeals consolidated.

By statute, the filing of a notice of appeal stays a writ of mandate unless otherwise ordered by the trial court or this court. (See Code Civ. Proc.,

---

[1] Public Contract Code section 5110 provides:

"(a) When a project for the construction, alteration, repair, or improvement of any structure, building, or road, or other improvement of any kind is competitively bid and any intended or actual award of the contract is challenged, the contract may be entered into pending final decision of the challenge, subject to the requirements of this section. If the contract is later determined to be invalid due to a defect or defects in the competitive bidding process caused solely by the public entity, the contractor who entered into the contract with the public entity shall be entitled to be paid the reasonable cost, specifically excluding profit, of the labor, equipment, materials, and services furnished by the contractor prior to the date of the determination that the contract is invalid if all of the following conditions are met:

"(1) The contractor proceeded with construction, alteration, repair, or improvement based upon a good faith belief that the contract was valid.

"(2) The public entity has reasonably determined that the work performed is satisfactory.

"(3) Contractor fraud did not occur in the obtaining or performance of the contract.

"(4) The contract does not otherwise violate statutory or constitutional limitations.

"(b) In no event shall payment to the contractor pursuant to this section exceed either of the following:

"(1) The contractor's costs as included in its bid plus the cost of any approved change orders.

"(2) The amount of the contract less profit at the point in time the contract is determined to be invalid.

"(c) Notwithstanding subdivision (a), this section shall not affect any protest and legal proceedings, whether contractual, administrative, or judicial, to challenge the award of the public works contract and enforce competitive bidding laws, nor affect any rights under Section 337.1 or 337.15 of the Code of Civil Procedure."

§§ 916, 1110b.) By minute order, the trial court denied Williams's motion for relief from the automatic stay. No similar motion was filed in this court.

**Discussion**

1. *Introduction*

We note, initially, that Williams has not filed a brief in this appeal. Accordingly, we will address the District's contentions without setting forth the traditional statement of respondent's position on the issues. (Emmett filed a notice of joinder in the District's brief.)

The District contends the appropriate standard of review, both for us and for the trial court, is abuse of discretion. Thus, we must determine whether, as the trial court found, the District's actions were arbitrary, capricious, entirely lacking in evidentiary support, or inconsistent with proper procedure. (*MCM Construction, Inc. v. City and County of San Francisco* (1998) 66 Cal.App.4th 359, 368 [78 Cal.Rptr.2d 44]; see also *Ocean Park Associates v. Santa Monica Rent Control Bd.* (2004) 114 Cal.App.4th 1050, 1062 [8 Cal.Rptr.3d 421].) At this stage of the case, the relevant facts are undisputed. The primary issue is whether the District's actions were an abuse of discretion because inconsistent with proper procedure.[2]

2. *"Responsible" Bidders and "Responsive" Bids*

 School districts, like most other public agencies, are required by law to award construction contracts (with certain narrow exceptions) to the "lowest responsible bidder." (Pub. Contract Code, § 20111.) An agency has discretion to determine whether a low bidder is "responsible," that is, whether the bidder has the fitness, quality, and capacity to perform the proposed work satisfactorily. (*City of Inglewood-L.A. County Civic Center Auth. v. Superior Court* (1972) 7 Cal.3d 861, 867 [103 Cal.Rptr. 689, 500 P.2d 601].) In making this determination, however, the agency is required to afford a significant level of due process to the bidder, including notice and an opportunity to respond. (*Id.* at pp. 870–871.)

---

[2] The District also contends Williams had an adequate remedy at law and was not entitled to a writ of mandate. For reasons set forth in *Monterey Mechanical Co. v. Sacramento Regional County Sanitation Dist.* (1996) 44 Cal.App.4th 1391, 1413–1414 [52 Cal.Rptr.2d 395], we conclude Williams was entitled to proceed by petition for writ of mandate. We also note, however, that the judgment in this case has been stayed pending appeal and it seems likely Emmett has substantially concluded the work in question. We express no opinion concerning an award of alternative monetary relief to Williams in this or another proceeding. (Cf. *Kajima/Ray Wilson v. Los Angeles Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 316 [96 Cal.Rptr.2d 747, 1 P.3d 63].)

"A determination that a bidder is responsible [or not] is a complex matter dependent, often, on information received outside the bidding process and requiring, in many cases, an application of subtle judgment. Not only is the process complex, but the declaration of nonresponsibility may have an adverse impact on the professional or business reputation of the bidder." (*Taylor Bus Service, Inc. v. San Diego Bd. of Education* (1987) 195 Cal.App.3d 1331, 1341–1342 [241 Cal.Rptr. 379].) For example, in *Raymond v. Fresno City Unified Sch. Dist.* (1954) 123 Cal.App.2d 626, 628 [267 P.2d 69], the school district received evidence that problems on the bidder's prior construction project were so significant the bidder could not be found a responsible bidder on the present project.

In addition to the determination whether a bidder is responsible, the agency must also determine whether the bid is responsive to the call for bids, that is, whether the bid "promises to do what the bidding instructions demand." (*Taylor Bus Service, Inc. v. San Diego Bd. of Education, supra*, 195 Cal.App.3d at p. 1341.) For example, in *Valley Crest Landscape, Inc. v. City Council* (1996) 41 Cal.App.4th 1432, 1443 [49 Cal.Rptr.2d 184], the bid documents required that subcontractors perform less than 50 percent of the contemplated construction project. The lowest bid stated that subcontractors would perform over 80 percent of the work. The court held this bid nonresponsive and concluded the city was not permitted to award the contract based on the nonresponsive bid. (*Ibid.*)

In the usual case, the determination that a bid is nonresponsive is not based on disputed facts, does not involve an exercise of agency discretion, and does not require a hearing for the excluded bidder. (*Taylor Bus Service, Inc. v. San Diego Bd. of Education, supra*, 195 Cal.App.3d at pp. 1342–1343.)

At the core of the present case is the trial court's determination that the District, while purporting to find Williams's bid nonresponsive, in legal effect found Williams was not a responsible bidder. As the trial court found, the District failed to afford Williams a due process opportunity to contest that finding and thereby abused its discretion in rejecting Williams's bid. The trial court ordered the District to award the contract to Williams. In this latter respect, however, we disagree: As in most due process cases, we believe the remedy must permit the agency to properly consider the issues in a due process hearing, and then to exercise the discretion vested in the agency by statute. (*Kumar v. National Medical Enterprises, Inc.* (1990) 218 Cal.App.3d 1050, 1055–1056 [267 Cal.Rptr. 452]; see *Baldwin-Lima-Hamilton Corp. v. Superior Court* (1962) 208 Cal.App.2d 803, 817 [25 Cal.Rptr. 798].)

3. *The Subletting and Subcontracting Fair Practices Act Does Not Require Bidders to List Only Licensed Subcontractors*

The District asserts several grounds for its claim that Williams's bid was nonresponsive to the call for bids and, as a result, could be summarily rejected. Although the District impliedly acknowledges that no portion of the Public Contract Code or the Business and Professions Code, and no portion of its call for bids or bid specifications package, expressly requires that subcontractors be licensed at the time they are listed in a bid, the District argues in various ways that "public policy" and "common sense" demand that we imply such a requirement. We will discuss each of the locations in which the District would have us find such a requirement, beginning with the code sections that most directly regulate the role of subcontractors in the award of public works contracts.

The Subletting and Subcontracting Fair Practices Act (the act), Public Contract Code section 4100 et seq., requires, among other provisions, that bidders for public works projects list in their bids the "name and the location of the place of business of each subcontractor who will perform work or labor or render service to the prime contractor in or about the construction of the work or improvement . . . ." (Pub. Contract Code, § 4104, subd. (a)(1).) Bidders are also required to state the "portion of the work that will be done by each subcontractor . . . ." (*Id.*, § 4104, subd. (b).) "The prime contractor shall list only one subcontractor for each portion as is defined by the prime contractor in his or her bid." (*Ibid.*)

The act seeks to protect both the public agency issuing the call for bids and subcontractors who submit subbids to prime contractors. (*Southern Cal. Acoustics Co. v. C. V. Holder, Inc.* (1969) 71 Cal.2d 719, 725–726 [79 Cal.Rptr. 319, 456 P.2d 975].) As to public agencies, the act permits the agency to investigate and approve both initially listed subcontractors and any substitute subcontractors proposed by the prime contractor. (See *E. F. Brady Co. v. M. H. Golden Co.* (1997) 58 Cal.App.4th 182, 190–191 [67 Cal.Rptr.2d 886].)

As to subcontractors, the act seeks to prevent "bid shopping and bid peddling." (Pub. Contract Code, § 4101.) These practices involve efforts by prime contractors to coerce lower bids from subcontractors after a contract has been awarded to the prime bidder using as leverage prior bids from subcontractors (shopping) and efforts by other subcontractors to undercut the price of successful subcontractors after the prime contract has been awarded (peddling). (*E. F. Brady Co. v. M. H. Golden Co., supra*, 58 Cal.App.4th at p. 189.)

The District contends that "if bidders are allowed to list unlicensed subcontractors to be replaced after the contract award with licensed subcontractors . . . [t]he public policy and purpose behind the Act will be abrogated." This argument, however, erroneously assumes that an agency is without tools to deal with such conduct by a bidder.

If an agency had reason to believe a bidder knowingly listed a subcontractor, whether licensed or not, with the intention of substituting a different subcontractor once the prime contract was awarded, the agency clearly would be entitled to reject the prime bidder as not responsible: Such action by a bidder would be a violation of the act, which provides that a "prime contractor whose bid is accepted may not: [¶] . . . [¶] (b) Permit a subcontract to be . . . performed by anyone other than the original subcontractor listed in the original bid, without the consent of the awarding authority, or its duly authorized officer." (Pub. Contract Code, § 4107.)

Further, if the agency discovered such action after the contract was awarded, the agency may take remedial action: "A prime contractor violating any of the provisions of [the act] violates his or her contract and the awarding authority may exercise the option, in its own discretion, of (1) canceling his or her contract or (2) assessing the prime contractor a penalty . . . ." (Pub. Contract Code, § 4110.)

Such a determination by a public agency is a serious matter, however. It is precisely the type of complex determination, requiring exercise of subtle administrative judgment, that has been held to involve a finding of nonresponsibility, not the more straightforward finding of nonresponsiveness. (See *Taylor Bus Service, Inc. v. San Diego Bd. of Education, supra,* 195 Cal.App.3d at p. 1341.) Thus, by statute, a prime contractor accused of violating the act by intentionally switching out its listed subcontractors would be entitled "to a public hearing and to five days' notice of the time and place thereof." (Pub. Contract Code, § 4110.)

██ Because there are ample remedies available to public agencies when confronted with prime contractors who violate the act by intentionally listing subcontractors with no expectation the subcontractor will actually perform the work, we conclude effective enforcement of the act does not require an implied blanket requirement that all subcontractors be licensed at the time prime bids are submitted.

Far from abrogating the effectiveness of the act, our conclusion protects innocent bidders and their listed subcontractors from arbitrary or erroneous disqualification from public works contracting, a purpose fully consistent with the act. In the present case, for example, the bid documents provided

that any work not designated in the bid for completion by a subcontractor must be completed by the prime contractor directly. Williams, after the licensing issue was discovered by the District, advised the District it was fully ready to perform the concrete work itself if the District declined to permit a substitute subcontractor. Unless the District determined that listing the unlicensed subcontractor was intentional or otherwise served to establish Williams was not a responsible bidder, no purpose of the Public Contract Code would be served by excluding Williams's bid: the District would receive the same product at the same price stated in the bid, the low bidder and its other listed subcontractors would be awarded the work, and the only entity made poorer would be Patch Master, which has relinquished all claims.[3]

■ We emphasize that this holding does not, as the District strenuously contends, require a public agency to "accept unlicensed subcontractors and wait until after the contract award for the bidder to [apply to] substitute them out." Instead, what is required is a case-by-case determination that a prime contractor is not responsible, for example, because it has listed a subcontractor it has no intention of actually using. That case-by-case determination requires a due process proceeding, which the District failed to offer in this case. (See *City of Inglewood-L.A. County Civic Center Auth. v. Superior Court, supra,* 7 Cal.3d at pp. 870–871.)

4. *The Contractors' State License Law Does Not Prohibit Inclusion of Unlicensed Subcontractors*

■ The Contractors' State License Law, Business and Professions Code section 7000 et seq., regulates participants in the construction industry. Business and Professions Code section 7026[4] includes subcontractors within

---

[3] The District contends Williams's actions gave it an unfair advantage over other bidders because Williams would be permitted to list an unlicensed subcontractor while other bidders could not. The District has not attempted to explain how this created an actual or potential economic benefit for Williams, since the bid documents at all times permitted Williams to elect to perform the work itself by not listing subcontractors at all.

[4] Business and Professions Code section 7026 provides: " 'Contractor,' for the purposes of this chapter, is synonymous with 'builder' and, within the meaning of this chapter, a contractor is any person who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or herself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith, or the cleaning of grounds or structures in connection therewith, or the preparation and removal of roadway construction zones, lane closures, flagging, or traffic diversions, or the installation, repair, maintenance, or calibration of monitoring equipment for underground storage tanks, and whether or not the performance of work herein described involves the addition to, or fabrication into, any structure, project,

the definition of contractors. A contractor includes one who undertakes, offers to undertake, or submits a bid for, a building project. The District contends, rather elliptically: "A contractor is not someone who just enters into a contract or performs construction work."

Filling in the blanks, we take the District's argument to be that one who bids on or offers to undertake construction is engaged "in the business or [is acting] in the capacity of a contractor within this state," as described in Business and Professions Code section 7028, subdivision (a), a code section the District does not cite but upon which it apparently relies. That section further states that such action is a misdemeanor. Accordingly, the District appears to argue, a subcontractor who has submitted a subbid to a prime bidder is engaged in the business of contracting and is required to have a contractor's license in order to submit a valid subbid.

While there is a certain formal logic to the District's argument—and, indeed, it might even be correct that submission of a bid by an unlicensed subcontractor is a misdemeanor—the argument does not lead to the conclusion that Williams's bid was nonresponsive. As the court stated in *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 440 [30 Cal.Rptr.3d 755, 115 P.3d 41], "the Legislature has demonstrated . . . that it knows how to invalidate the agreements of unlicensed contractors when it wishes to do so."

The example of such legislative action discussed by the *MW Erectors* opinion is Business and Professions Code section 7028.15, subdivision (a), which, with certain exceptions, forbids "any person to submit a bid to a public agency in order to engage in the business or act in the capacity of a contractor within this state without having a license therefor." Unless an exception is applicable, "a bid submitted to a public agency by a contractor who is not licensed in accordance with this chapter shall be considered nonresponsive and shall be rejected by the public agency." (Bus. & Prof. Code, § 7028.15, subd. (e); see *Southern Cal. Acoustics Co. v. C. V. Holder, Inc.*, *supra*, 71 Cal.2d at pp. 727–728 [submission of subbid to prime bidder creates no contractual or quasicontractual relationship between subbidder and public agency].) Where the statute specifies that a bid from an unlicensed contractor is nonresponsive, but fails to require licenses of subcontractors, it is not the judicial function to add to the plain language of the statute so as to include additional, closely related circumstances that the Legislature failed to include. (See, e.g., *Songstad v. Superior Court* (2001) 93 Cal.App.4th 1202, 1208 [113 Cal.Rptr.2d 729].)

development or improvement herein described of any material or article of merchandise. 'Contractor' includes subcontractor and specialty contractor. 'Roadway' includes, but is not limited to, public or city streets, highways, or any public conveyance."

■ We conclude a subcontractor is not required by the Business and Professions Code to have a contractor's license at the time it submits a subbid, although established law generally requires a license at the time the subcontractor executes its contract with a successful prime bidder. (See *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc., supra,* 36 Cal.4th at p. 436; see also Pub. Contracts Code, § 4107, subd. (a)(6) [permitting removal of listed contractor who "is not licensed"].) Further, listing of an unlicensed subcontractor in the bid of a properly licensed prime bidder does not render the bid nonresponsive under Business and Professions Code section 7028.15.

5. *The Bid Package Did Not Require Listing Exclusively of Licensed Subcontractors*

The District contends the subcontractor designation form required from bidders, as well as articles 5(a) and 35(a) of the general conditions for bidders, required bidders to list only licensed subcontractors in their bids. The District acknowledges that nothing in the bid documents specifically states that listed subcontractors must be licensed at the time the bid is submitted. However, it contends public policy and common sense require that listed subcontractors be licensed.

The District relies particularly on article 35 of the general conditions for the contract. Paragraph (a) of article 35 states (omitting extraneous capitalization): "Permits, licenses, and certificates necessary for prosecution of work, shall be secured and paid for by contractor, unless otherwise specified. All such permits, licenses, and certificates shall be delivered to the construction manager before required for the work to be performed or demand is made for the certificate of final payment whichever comes first. Contractor shall, and shall require subcontractors to, maintain contractor's licenses in effect as required by law."

The District contends that, in order to engage in preliminary activities such as bidding and offering to do licensed work, a contractor and subcontractor are required by Business and Professions Code section 7028 (and therefore "required by law") to have a contractor's license. Accordingly, the District says, a prime contractor's bid is nonresponsive if it already has failed to "require" subcontractors to maintain their licenses.

The trial court concluded that, taken in the context of the entirety of paragraph 35(a), the license requirement "applies to the duties of the contractor **once the contract is awarded**." (Original boldface.) The District rejects this conclusion on the basis that "the lower court did not look at the language of Article 35(a). Instead it looked at the location of Article 35(a) in the General Conditions rather than the Instructions to Bidders."

It is apparent that the trial court did "look at the language" in question. The trial court's analysis is expressly based on the context of the license requirement within a paragraph that focuses on the duties of the successful bidder in performing work under the contract, not on the duties of the contractor-as-bidder. We agree with the trial court: The obvious point of article 35, entitled "Obtaining of Permits, Licenses and Easements," is to assign to the prime contractor, rather than to the public agency, responsibility for obtaining and maintaining the permits, licenses, and certificates necessary to operation of a lawful worksite. Whether a subcontractor has a license at the time it is listed in a prime bid has nothing to do with operation of a lawful worksite.

Further, a prime contractor has only a limited range of methods by which to "require" a subcontractor to maintain its license: it can notify the subcontractor of its failure and demand remediation, or it can act under Public Contract Code section 4107 to replace the contractor. At the point of submission of a bid listing an unlicensed contractor, it cannot be said the bidder has failed to "require" its subcontractors to be licensed, particularly when the bidder has no knowledge the license has expired.

Finally, the District contends paragraph (a) of article 5 of the general conditions extends the requirement for licensing of prime bidders so as to require licensing of listed subcontractors. The relevant provision of paragraph 5(a) states (omitting irrelevant capitalization): "Contractor agrees to bind every subcontractor by terms of the project documents as far as such terms are applicable to subcontractor's work." Because the call for bids requires that all bidders be licensed at the time of bidding, the District says, the "terms of the project" require all subcontractors to be licensed at the time of bidding.

Not all "terms of the project documents" are "applicable to subcontractor's work." For example, the project documents require that all bids "must be accompanied by a bidder's bond, cashier's check, or certified check for at least ten per cent (10%) of the amount of the base bid . . . ." Yet the District does not contend all bids were required to include bid bonds from subcontractors.

The requirement of licensing, as applicable to the "subcontractor's work," is that the subcontractor be licensed when it enters into the construction contract and that its licensed status continue until its work is completed. Just as Patch Master was not required to submit a bid bond as part of Williams's bid package, it was not required to have a current license when Williams submitted its bid.

### 6. *The Trial Court Did Not Prohibit Investigation of Subcontractors*

The District contends that the "lower court found that the District could not investigate the subcontractors' licensing prior to the contract award." The trial court, however, did no such thing. Instead, the trial court said that such an investigation was "more suited" to a determination of bidder responsibility than to a determination the bid was nonresponsive. We agree. It is entirely proper for a public agency to make a determination that a lapsed or nonexistent subcontractor's license, under particular circumstances, renders a low bidder not responsible. The District, however, has not sought to do that. Instead, it has impermissibly adopted a blanket, retroactive policy that no bidder may list a subcontractor that, for any reason, does not have a current license on the day the prime bid is submitted.

### 7. *The Remedy*

The trial court canceled the contract between the District and Emmett; it ordered the District to bar Emmett from further work and to present to Williams a contract for the remaining portion of the concrete work. In doing so, the trial court deprived the District of the opportunity to exercise its statutory discretion in a manner consistent with due process. That is to say, while Williams had the right not to be deprived of its status as lowest responsible bidder without due process, it did not have a right to the contract simply because it submitted the lowest bid. Otherwise, the statutory protection afforded public agencies—that they must accept the low bid only where the bidder is likely to be able to deliver a quality product as promised in the contract—would be nullified.

The record before us is rather limited. On this record, though, there seems no basis for a determination that Williams is not a responsible bidder, and it appears that Williams's listing of an unlicensed subcontractor was inadvertent and unlikely to reduce its ability to perform the contract. The District, however, has never been called upon to present its claim and its evidence if it has a good faith reason to conclude Williams is not responsible. It is entitled to make an informed determination that Williams is or is not a responsible bidder, so long as it complies with established requirements of due process. (*Sinaiko v. Superior Court* (2004) 122 Cal.App.4th 1133, 1143 [19 Cal.Rptr.3d 371].)

## Disposition

The judgment is reversed. On remand, the trial court shall order the District to offer a contract to Williams within 15 days of such order, unless before that date the District provides notice to Williams that it is deemed not a responsible bidder and offers a due process hearing on that determination. The trial court shall retain jurisdiction to cancel and rescind the District's contract with Emmett, and to order appropriate relief to Emmett as set forth in Public Contract Code section 5110, and shall exercise this jurisdiction if the District and Williams enter into a contract for the remainder of the concrete and fence work at issue here. The parties shall bear their own costs on appeal.

Harris, J., and Gomes, J., concurred.

A petition for a rehearing was denied January 31, 2007, and the petitions of both appellant and real party in interest for review by the Supreme Court were denied May 9, 2007, S150325.